UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROGER A. BEERY, | ) Case No. 3:18CV2087 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE JEFFREY HELMICK |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) REPORT AND RECOMMENDATION |

Plaintiff Roger A. Beery II ("Beery" or "claimant") has challenged the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying his application for

disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423, *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and the

case is before the undersigned United States Magistrate Judge pursuant to an automatic referral

under Local Rule 72.2(b) for a Report and Recommendation.  The issue before the court is

whether the final decision of the Commissioner is supported by substantial evidence and,

therefore, conclusive.  For the reasons set forth below, the undersigned recommends that the

Commissioner's final decision be remanded.

## I.  PROCEDURAL HISTORY

On June 25, 2015, the claimant protectively filed an application for DIB, alleging

disability beginning February 20, 2015.  (R. 9, Transcript ("tr."), at 233, 393-401, 422-435.)

Claimant's application was denied initially and upon reconsideration.  *Id.* at 303-322, 323-339,

340-343.  Thereafter, the claimant filed a request for a hearing before an administrative law

judge (ALJ).  *Id.* at 355-356.

The ALJ held a hearing on April 25, 2017.  (R. 9, tr., at 258-302.)  Claimant appeared at

the hearing, was represented by counsel, and testified.  *Id.* at 260, 262-290.  A vocational expert

(VE) attended the hearing and testified.  *Id.* at 260, 290-301.  On March 6, 2018, the ALJ issued

a decision and concluded claimant was not disabled.  *Id.* at 233-246.  The Appeals Council

denied Beery's request for review on July 13, 2018, thus rendering the ALJ's decision the final

decision of the Commissioner.  *Id.* at 1-4.

On September 11, 2018, Beery filed a complaint challenging the Commissioner's final

decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.

Beery presents the following legal issues for the court's review:

> 1.  The ALJ failed to consider whether the evidence of record met or equaled
> Listing 1.04A.
>
> 2.  The ALJ failed to properly evaluate the findings of the only examining
> physician of record, Dr. Grodner.

(R. 10, PageID #: 1489.)

## II.  PERSONAL BACKGROUND INFORMATION

Beery was born in 1971, and was 43 years old on the alleged disability onset date.  (R. 9,

tr., at 244, 395, 422.)  He has a high school education and is able to communicate in English.  (R.

9, tr., at 245, 425, 427.)  Beery has past work as a rough grinder/painter, forklift operator, fast

food cook, and short order cook.  (R. 9, tr., at 291.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Beery's brief alleging error by the ALJ. Beery, as noted earlier, applied for DIB benefits on June 25, 2015, alleging disability beginning February 20, 2015.  (R. 9, tr., at 233, 393-401.)  He listed the conditions that limited his ability to work as "spinal cord injury, epidural abscess, paraparesis, protein deficiency, anxiety, depression."  *Id.* at 426.

On April 13, 2015, Beery had a laminectomy and decompression to address T7, T8 and T9 spinal cord compression, osteomyelitis, discitis, and thoracic stenosis with epidural abscess. (R. 9, tr., at 488-489, 523, 525, 528-529.)  He also had a posterior fixation two days later.  *Id.* at 1081.  At the time, he was found to have right-sided pneumonia and empyema, and his surgery hospitalization was complicated by acute respiratory failure requiring intubation.  *Id.* at 1076, 1081-1082.

Beery presented to Herbert A. Grodner, M.D. for a consultative physical examination on September 21, 2015.  (R. 9, tr., at 1152-1158.)  Dr. Grodner indicated that Beery had a spinal cord injury, diagnosed as T8-T9 osteomyelitis/epidural abscess in April 2015, and noted Beery had been treated with a T8-T9 decompression with posterior fixation.  *Id.* at 1152.  The claimant reported that he had fallen three times since his surgery.  *Id.*  He also reported back pain, without radiation into his legs, but noted some numbness in his feet, as well as some numbness and tingling in the third and fourth fingers of his left hand.  *Id.*  Beery stated he was able to manage

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

hygiene and dressing himself, but had to do it slowly.  *Id.*  He is able to do some cooking and shopping, but cannot do housekeeping (such as vacuuming) or laundry.  *Id.*

On physical examination, Dr. Grodner found no tenderness to palpation and no edema. (R. 9, tr., at 1153.)  Dr. Grodner noted that Beery's gait was antalgic, and he used a cane as his gait was unsteady.  *Id.*  He appeared to be at risk for falling.  *Id.*  The doctor found limited range of motion of the lumbar spine, although straight leg raise was negative.  *Id.*  Claimant had decreased sensation in the third and fourth fingers of the left hand, but grasp and manipulation were normal.  *Id.*

Dr. Grodner diagnosed Beery with osteomyelitis, status post acute respiratory failure requiring ventilatory support, a history of deep vein thrombophlebitis, hypertension well-controlled, and a history of diverticulitis.  (R. 9, tr., at 1154.)  Dr. Grodner found that Beery required an ambulatory aid, due to his unsteady gait and risk of falling.  *Id.*  The doctor stated that claimant would have difficulties with activities such as prolonged lifting, carrying, pushing, pulling and walking.  *Id.*  Dr. Grodner noted that fine motor skills were intact, and although Beery had some numbness in his left hand, he was right-hand dominant and performed most activities with his right hand.  *Id.*  Overall, Dr. Grodner opined that Beery "would have difficulty performing basic work-related activities."  *Id.*

On initial review, state agency physician Michael Lehv, M.D., completed a physical residual functional capacity assessment on September 30, 2015.  (R. 9, tr., at 314-317.)  Dr. Lehv opined that Beery was limited to lifting and carrying twenty  pounds occasionally, and ten pounds frequently.  *Id.* at 315.  The claimant was capable of standing or walking for about two hours of an eight-hour workday, and sitting for about six hours.  *Id.*  The doctor opined that the

4

claimant had unlimited ability to push or pull, other than as stated for lift and carry.  *Id.*  These exertional limitations were based on claimant's history of osteomyelitis, multilevel thoracic spondylosis, and deep vein thrombosis.  *Id.*  The claimant could occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds.  *Id.* at 315.  He could occasionally balance, stoop, kneel, crouch, or crawl.  *Id.* at 315-316.  Beery had a manipulative limitation insofar as feeling with his left hand, due to ulnar sensory loss, although his capacity for gross and fine manipulation was unlimited.  *Id.* at 316.  Dr. Lehv also opined that Beery should avoid all exposure to hazards such as machinery and heights.  *Id.* at 317.

On reconsideration, state agency physician Elizabeth Das, M.D., completed a physical residual functional capacity (RFC) assessment on November 9, 2015.  (R. 9, tr., at 332-334.)  Dr. Das' RFC assessment was largely the same as Dr. Lehv's, with the following exceptions.  Dr. Das opined that Beery was limited to lifting and carrying ten pounds, both  occasionally and frequently.  *Id.* at 332.  Dr. Das assessed greater manipulative limitations, indicating that Beery's gross and fine manipulation were limited in the left hand, and he had limited fingering in that hand, due to ulnar sensory loss.  *Id.* at 333-334.

On February 18, 2016, Beery presented to Francis Voegele, M.D., for follow-up concerning chronic pain management.  (R. 9, tr., at 1393-1395.)  Dr. Voegele reported that due to an increase in pain medication Beery's "pain control has been better than it has been any time in the last year."  *Id.* at 1393.  His mood had improved, since chronic right leg pain was under control; and his back pain was less severe.  *Id.*  The doctor indicated that Beery had normal strength and reflexes, no sensory deficit in his legs, and a normal gait.  *Id.* at 1394.  He noted that "heel/toe walk is preserved bilaterally."  *Id.*

5

Beery saw Dr. Voegele on January 6, 2017, for chronic left back pain without sciatica. (R. 9, tr., at 1373-1375.)  The pain was present in the thoracic spine and lumbar spine, but did not radiate.  *Id.* at 1373.  The doctor noted that Beery had tried analgesics (Lyrica) for the symptoms, which provided significant relief.  *Id.*  Dr. Voegele reported that the pain was under adequate control with no significant side effects.  *Id.*  A neurological review was negative for tingling, weakness or numbness.  *Id.*  On examination, claimant exhibited decreased range of motion in the thoracic back; he had some tenderness in the thoracic back, but less in the lumbar area; and his gait was normal.  *Id.* at 1373-1374.

Beery went to the emergency room several times in 2016 and 2017 for nausea and vomiting.  *See, e.g.*, R. 9, tr., at 239, 1346-1361 (June 2016), 1414-1429 (May 2017), 1431-1447 (June 2017).  On June 11, 2017, Alaina Schwartzlander, CNP, considered appendicitis, bowel obstruction, gastroenteritis, pancreatitis, electrolyte disorder, and a number of other possible conditions, but found no significant underlying disease.  *Id.* at 1436; *see also* 1424-1425 (May 19, 2017, visit noting no acute intraabdominal process, no indication of appendicitis, no acute diverticulitis identified).  There was no sign of severe dehydration or electrolyte disturbance.  *Id.* at 1436.  The presence of THC was noted "which may be the cause of his vomiting," and the record indicates "Beery may also be experiencing drug withdraw[al]."  *Id.* at 1436, 1437.  At the May 19, 2017, emergency room visit, Beery denied any difficulty walking.  *Id.* at 1414.

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the  March 6, 2018, decision:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

6

2.  The claimant has not engaged in substantial gainful activity since February 20, 2015, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  osteomyelitis; degenerative disc disease and degenerative joint disease of the spine; status post thoracic laminectomy/fusion; obesity; deep vein thrombosis; diverticulosis; diabetes mellitus; depressive disorder; anxiety disorder  (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned  finds that the claimant has the residual functional capacity to perform sedentary work as defined in  20 CFR 404.1567(a) except:  can sit for 15 minutes at a time and then stand/walk for two to three minutes; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl; never climb ladders/ropes/scaffolds; frequently handle, finger, feel with bilateral upper extremities; avoid moving or hazardous machinery; no work at unprotected heights; use of a cane for balance, and would be absent from work one day per month.  Additionally, the claimant is limited to simple routine tasks but should avoid interaction with the public but be able to interact with coworkers and supervisors occasionally but on a superficial basis. The work cannot be at a production rate and pace and that requires only occasional decision making and changes.  And the claimant would be off task seven percent of the day.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on *** 1971, and was 43 years old, which is defined a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2015, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 9, tr., at 236, 239, 241, 244, 245, 246.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.*  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See*

9

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v.*

*Commissioner*, No. 11-11140, 2012 WL 883612, at \*5 (E.D. Mich Feb. 27, 2012) (quoting

*Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Beery presents the following legal issues for the court's review:

1.  The ALJ failed to consider whether the evidence of record met or equaled Listing 1.04A.

2.  The ALJ failed to properly evaluate the findings of the only examining physician of record, Dr. Grodner.

(R. 10, PageID #: 1489.)

### A.  Listing 1.04

Beery contends that the ALJ's decision should be reversed because the ALJ failed to

consider whether his impairments met or equaled Listing 1.04A.  (R. 10, PageID #: 1493-1495.)

He argues that because the ALJ found he had a severe impairment of degenerative disc disease,

the ALJ should have evaluated his condition under Listing 1.04.  *Id.* at 1493.  Beery asserts that

the ALJ "failed to even mention the listing."  *Id.* at 1493; *see also id.* at 1495 ("never mentioned

the listing at all").

At the second step of the sequential analysis, the claimant must show that he suffers from

a severe medically determinable physical or mental impairment.  *Wilson*, 378 F.3d at 548 (citing

20 C.F.R. § 404.1520(a)(4)(ii)).  Where an ALJ  determines at Step Two that a claimant has a

severe physical impairment, the ALJ is generally required to:

> . . . consider the impairment at step three of the sequential analysis.  *See*
> [*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 (6th Cir. 2011)]
> (finding that the ALJ "must compare the medical evidence with the requirements
> for listed impairments in considering whether the condition is equivalent in

10

severity to the medical findings for any Listed Impairment."). In *Reynolds*, the court found that "by failing to analyze Reynolds' physical condition in relation to the Listed Impairments," the ALJ "skipped an entire step of the necessary analysis." *Id.* at 416.  The *Reynolds* court found that "[t]he ALJ's error was not harmless, for the regulations indicate that, if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(iii)).

*Whitaker v. Berryhill*, No. 4:16CV38, 2017 WL 9251310, at \*4 (E.D. Tenn. Aug. 11, 2017),

*adopted by* 2017 WL 4030578 (E.D. Tenn. Sept. 13, 2017).

In the third step, it is claimant's burden to bring forth evidence to establish that his

impairments meet or are medically equivalent to a listed impairment.  An impairment or

combination of impairments is considered medically equivalent to a listed impairment "if the

symptoms, signs and laboratory findings as shown in medical evidence are at least equal in

severity and duration to the listed impairments." *Ridge v. Barnhart*, 232 F.Supp.2d 775, 788

(N.D. Ohio 2002) (quoting *Land v. Secretary, HHS*, 814 F.2d 241, 245 (6th Cir. 1986) (per

curiam)).

The elements of Listing 1.04(A) are:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

11

The Sixth Circuit has recognized that the relevant Social Security regulations require an ALJ to find a claimant disabled if he meets a Listing.  *Smith-Johnson v. Commissioner*, No. 13-1696, 2014 WL 4400999, at \*5 (6th Cir. Sept. 8, 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  Beery "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 2014 WL 4400999, at \*6.  Although it is the claimant's burden of proof at Step 3, the ALJ must provide articulation of his Step 3 findings that will permit meaningful review. *Woodall v. Colvin*, No. 5:12CV1818, 2013 WL 4710516, at \*10 (N.D. Ohio Aug. 29, 2013).

Here, at Step Two, the ALJ determined that Beery has, among his other impairments, the severe physical impairment of degenerative disc disease.  (R. 9, tr., at 236.)  At Step Three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. 9, tr., at 239-240.)  Regarding Listing 1.04 (Disorders of the spine), the ALJ stated:

> The claimant had a long and complicated recovery from his spinal infection.  By February 2016[2] his pain was under control, and although there was limitation of motion of the spine, there were no neurological deficits, straight leg raising was negative, and gait was normal.  The claimant is also obese, but again the claimant has been able to move about.  Therefore his impairment did not last 12 months, and the criteria of Listing 1.04 is not met or equaled.  Social Security Ruling (SSR) 02-01p has also been considered.

(R. 9, tr., at 240.)  The claimant's contention that the ALJ "failed to even mention the listing" (R. 10, PageID #: 1493) lacks persuasion.

---

[2] The ALJ's reference to February 2016 appears a citation to claimant's visit to Dr. Voegele on February 18, 2016, which is discussed earlier in the ALJ's decision and in this report, *supra* Section III.  *See* R. 9, tr., at 238, 240, 1393-1395; *see also* R. 11, PageID #: 1509.

Beery contends that he has put forth sufficient evidence demonstrating that the requirements of Listing 1.04A have been met or equaled.  (R. 10, PageID #: 1494.)  At the hearing, counsel asserted that Beery had osteomyelitis, an infection arising out of his neck surgery, which has caused him chronic pain.  (R. 9, tr., at 261.)  Counsel also noted that claimant had uncontrolled Type II diabetes, as well as diverticulitis and a history of deep vein thrombosis. *Id.*  Counsel then stated that "... I think clearly that Mr. Beery meets and equals 1.04." *Id.*  None of the medical conditions that claimant cited at the hearing would meet or equal Listing 1.04, however.

In his brief on the merits, Beery asserts that the record contains "objective clinical imaging documenting the presence of nerve root compression."  (R. 10, PageID #: 1494.)  He points to pre-operative MRI results from March 2015 that were "consistent with discitis and osteomyelitis." *Id.*  The presence of inflammation (discitis) or infection (osteomyelitis) does not itself document nerve root compression.  The March 2015 pre-operative MRI, however, also indicated there may be "*possible* mild cord compression" at T7-T8 (R. 9, tr., at 488-489 (emphasis added)), but the April 2015 surgery performed laminectomies and decompression at T7, T8, and T9 (*id.* at 526, 534) that resolved the possible compression issue at T7-T8.

Beery also contends that a subsequent MRI revealed spondylosis, spondylolisthesis and bilateral foraminal stenosis.  (R. 10, PageID #: 1494, citing R. 9, tr., at 1242.)  While spondylolisthesis or foraminal stenosis can cause nerve root compression, neither condition necessarily does so. *See, e.g.*, *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 358 n.2 (6th Cir. 2002) (spondylolisthesis, in some instances, may lead to nerve root compression); *Baker v. Commissioner*, No. 3:17CV2373, 2018 WL 4586241, at *3 (N.D. Ohio Sept. 25, 2018)

13

(foraminal stenosis, but no definitive nerve root compression); *Issac v. Commissioner*, No. 1:16CV1345, 2017 WL 3705902, at \*10 (N.D. Ohio Aug. 28, 2017) (foraminal stenosis, but doctor saw no nerve root compression); *Dvorak v. Commissioner*, No. 1:15CV2319, 2017 WL 492637, at \*2 (N.D. Ohio Feb. 7, 2017) (foraminal stenosis but no evidence of nerve root compression); *Cutcher v. Commissioner*, No. 4:14CV1958, 2015 WL 5233244, at \*2 (N.D. Ohio Sept. 8, 2015) (spondylolisthesis but no nerve root compression); *Shultz v. Commissioner*, No. 1:14CV1587, 2015 WL 3905065, at \*15 (N.D. Ohio June 25, 2015) (ALJ considered claimant's spondylolisthesis, but objective medical evidence showed no signs of nerve root compression); *Goddard v. Commissioner*, No. 2:11CV00809, 2012 WL 3269337, at \*8 (S.D. Ohio Aug. 10, 2012), *adopted by*, 2012 WL 4180703 (S.D. Ohio Sept. 18, 2012) (ALJ recognized spondylolisthesis, but stressed there was no evidence of nerve root compression).  The November 2015 MRIs referenced by Beery do not indicate actual nerve root compression. *See* R. 9, tr., at 1241-1245.

The Sixth Circuit has emphasized that the claimant has the burden of showing that his impairments are equal to or equivalent to a listed impairment. *Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at \*1 (6th Cir. Nov. 29, 2012) (per curiam) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)); *see generally Ridge*, 232 F.Supp.2d at 788.  Beery "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 2014 WL 4400999, at \*6; *see also Malone*, 2012 WL 5974463, at \*1.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone*, 2012 WL 5974463, at \*1 (quoting *Sullivan v.*

14

*Zebley*, 493 U.S. 521, 530 (1990)).  To meet Listing 1.04(A), there must be evidence of nerve

root compression.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.  Beery has not carried

his burden of proof; he does not point to any specific evidence of record that establishes he had

nerve root compression that has lasted or can be expected to last for a continuous period of not

less than twelve (12) months.  *See* 20 C.F.R. § 404.1505(a).  The ALJ found as much.  (R. 9, tr.,

at 240 ("impairment did not last 12 months").

In addition, the court finds that the ALJ provided sufficient articulation of the Step 3

findings on Listing 1.04(A) that permits meaningful review.  R. 9, tr., at 240; *see generally*

*Woodall*, 2013 WL 4710516, at \*10.  While succinct, the ALJ provided reasons supporting the

determination that Listing 1.04 was not met.  *Id.*  The ALJ's decision concerning Listing 1.04A

is based on substantial evidence in the record.

### B.  Examining Physician

The claimant also contends that the ALJ failed to properly evaluate the findings of the

only examining physician of record, Dr. Grodner.  (R. 10, PageID #: 1496-1499.)  The ALJ's

decision determined that Dr. Grodner's opinion was entitled to no weight, but Beery argues the

ALJ failed to evaluate the doctor's opinion under any of the Section 1527(c) factors.  *Id.* at 1497.

Unless the ALJ gives controlling weight to the opinion from a claimant's treating source,

Social Security regulations require the ALJ to consider the findings of state agency medical

consultants and explain the weight given to such the consultants.  20 C.F.R. § 404.1527.  State

agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must

explain any rejection of the state-agency doctor's opinions.  20 C.F.R. §§ 404.1527(c)(1),

(e)(2)(i) and (ii); SSR 96-8p.  Generally, more weight is to be given to the medical opinion of a

15

source who has examined the claimant than to the opinion of a non-examining source.  20 C.F.R. § 404.1527(c)(1).  In addition, it is the ALJ's responsibility to resolve conflicts when there are conflicting opinions provided from essentially the same medical data.  *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990).  *See generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC); SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Here, the ALJ's decision did not give controlling weight to a treating source, *see generally* R. 9, tr., at 241-244; therefore, the ALJ was required to explain the weight given to the examining physician's opinion.  First, the ALJ's decision described the findings from Dr. Grodner's physical examination. (R. 9, tr. at 237). Second, the ALJ addressed Dr. Grodner's opinion as follows:

> The undersigned cannot give any weight to the opinion of Dr. Grodner, the consultant.  Dr. Grodner stated that the claimant "would have difficulty performing basic work-related activities" (Exhibit 10F).  The final responsibility for determining if a claimant is "disabled" or "unable to work" is reserved for the Commissioner (20 CFR 404.1527(e) and 416.927(e)).

(R. 9, tr., at 241).

The ALJ is correct, of course, that whether a claimant would be unable to work full-time is an issue reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1).  Opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference.  *Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004).

16

However, Dr. Grodner's opinion was not limited to the sole issue regarding whether Beery was capable of employment.  *See generally* R. 9, tr., at 1152-1154; *see also* Section III, *supra*.  Dr Grodner conducted a physical examination and made a number of findings concerning claimant's medical condition.  *Id.*  The underlying decision provides no indication that the ALJ considered Dr. Grodner's actual findings and the Section 1527 factors[3] in deciding the weight assigned to doctor's opinion.

Because the decision lacks a proper analysis of Dr. Grodner's opinion, the court is left to speculate whether the weight assigned to his opinion in the decision is well-supported.  The ALJ's determination, therefore,  is not supported by substantial evidence and the matter should be remanded for a thorough explication of the reasons underlying the weight assigned to the consultative physician's opinion.

---

[3]  The factors are (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship and the frequency of examination, and the nature and extent of that relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c)(1)-(6).

17

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is not based on

substantial evidence in the record.  Accordingly, the undersigned recommends that the

Commissioner's final decision be remanded for further consideration.


<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:  <u>July 29, 2019</u>


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72(a); LR 72.3(a). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).